**N.R., as next friend of N.R.J.D., a minor, Appellants,**

v.

**A.D., Administrator of the Estate of R.J.D., Respondent.**

**No. 45294.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 28, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1983.

Application to Transfer Denied
Sept. 20, 1983.

James J. Sauter, St. Louis, for appellants.

Donald L. Schlapprizzi, St. Louis, for respondent.

SIMON, Presiding Judge.

N.R., as next friend of N.R.J.D., a minor, (appellants), appeal from an order of the Circuit Court of St. Louis County in a court tried case declaring R.J.D. was not the father of N.R.J.D.

On appeal, raising four points of error, appellants contend that the trial court erred in: (1) ruling that appellants' request for admissions, which R.J.D. did not answer, were substantially performed by his answers in a subsequent deposition; (2) failing to rule that the unanswered request for admissions did not conclusively establish these matters against R.J.D., the original party in interest, and bind the subsequent party in interest, the Administrator; (3) failing to consider and ignoring in its order evidence of the comparison of the appearance of the minor child with photograph of R.J.D.; and (4) holding that R.J.D. was not the father of N.R.J.D. We reverse and remand.

N.R., while working as a waitress in 1967, met R.J.D. at her place of employment. Several years later, in 1974, the two renewed their acquaintance and, between June and September, dated several times each week. In late September or early October, R.J.D. began dating another woman; consequently, N.R. saw him less frequently. N.R. avers that she and R.J.D. engaged in sexual relations when they began dating in late May, 1974, and again in early January, 1975. R.J.D. concedes that the two engaged in sexual intercourse on a regular basis between June and December 10, 1974, but denied any sexual involvement with N.R. after December 10, 1974. N.R. commenced her normal menstrual period on December 27. N.R.J.D. was conceived after January 1, 1975. During the time period of conception, N.R. dated other men. On February 19, her doctor confirmed her pregnancy. On that same day, she notified R.J.D. of her condition. On March 19, R.J.D. accompanied N.R. to an abortion clinic. She consulted the doctor there, and told R.J.D. that her pregnancy had advanced beyond the twelve week time limit for a first trimester abortion. In fact, N.R. was nine to ten and one-half weeks pregnant. N.R.J.D. was born on October 7, 1975.

On November 4, 1975, N.R., as mother of N.R.J.D., filed an amended petition for lying-in expenses against R.J.D., as putative father. On June 4, 1976, N.R. requested admissions from R.J.D. that he had engaged in sexual intercourse with her on January 5 and 10, 1975, and that he had stated to her that he believed he was the father of N.R.J.D. Only five days later, R.J.D. responded to these same matters in a deposition conducted by N.R.'s attorney. R.J.D. never responded to N.R.'s request for admissions; but unfortunately, prior to trial, R.J.D. died. An estate was opened and an Administrator appointed.

N.R. filed motions requesting that the trial court: (1) substitute the Administrator of R.J.D.'s estate as the defendant; (2) declare paternity; and (3) determine heirship. The trial court denied her motions and sustained the Administrator's motion to dismiss the complaint. N.R. appealed the trial court's ruling. Our court reversed and remanded in *N.R. v. R.J.D.*, 588 S.W.2d 76, 79[9, 10] (Mo.App.1979), holding that the actions for lying-in expenses were incurred

before R.J.D.'s death and the determination of the status of N.R.J.D. did not abate upon the death of R.J.D., but the action seeking future support for the child abated. *Id.* The parties consented to substitute the Administrator of the Estate of R.J.D., (Administrator), as the successor party in interest.

N.R. filed a second amended petition for declaration of R.J.D.'s paternity of N.R.J.D., determination of N.R.J.D.'s status as heir of R.J.D.'s estate, and for reimbursement of maternity and child support expenses incurred before the death of R.J.D. Subsequently, the heirship allegation was deleted. The Administrator moved to dismiss the petition and answering, denied all allegations of the sexual relationship between N.R. and R.J.D., but admitted that R.J.D. refused to pay medical and hospital bills incurred by N.R.

The trial court, reserving its ruling on the Administrator's objection, allowed N.R.'s attorney to read into the record the request for admissions and to establish that R.J.D. had not responded to the request. The trial court accepted N.R.'s evidentiary offers of the photograph of R.J.D. and permitted N.R.J.D. to appear in Court. Depositions of R.J.D., N.R. and D.W., a co-worker of N.R., constituted the only other evidence admitted at trial. Neither N.R. nor any other witnesses testified. The trial court, construing R.J.D.'s deposition responses as substantially performing N.R.'s request for admissions, found that R.J.D. was not the father of N.R.J.D. and dismissed the petition.

■ The first point we must consider on appeal is whether the trial court erred in holding that R.J.D.'s deposition responses substantially answered N.R.'s request for admissions. Request for admissions and depositions serve distinct functions.[1] A request for admissions, as authorized by Rule 59.01(a), is designed to remove an issue from trial or to determine which pleaded matters present genuine issues for trial. *Linde v. Kilbourne,* 543 S.W.2d 543 (Mo. App.1976).

In parts pertinent to the issues before us, Rule 59.01 parallels Fed.R.Civ.P. 36. *See* Rule 59.01, Committee Note (1974). The federal rule serves the same function described by the court in *Linde.* In *Asea v. Southern Pacific Transportation Co.,* 669 F.2d 1242, 1245[2] (9th Cir.1981), *rehearing* and *rehearing en banc* denied March 8, 1982, the Ninth Circuit stated that "the purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial."

In order to serve this economy function,[2] any matter admitted under the submission rule "is conclusively established, unless the court on motion permits withdrawal or amendment of the admission." Rule 59.-01(b). Thus, "it is the concession of the issue—otherwise determinable by the trier of fact—which comes into evidence, not the assumption of the party who makes the admission." *Linde,* at 547[7–9]. An element of the burden of proof or even an ultimate issue may be required for admission under the rule. *Id.*

Under the federal rule, admitted matters produce the same conclusive effect. *See Luick v. Graybar Electric Co., et al.,* 473 F.2d 1360, 1362[1] (8th Cir.1972), *citing* Fed.R.Civ.P. 36(a) and (b) and Moore's Fed.Prac. § 36.01.

■ As further evidence of the conclusory nature of admissions, the failure to respond to requests for admissions may leave

1. See Finman, The request for Admissions in Federal Civil Procedure, 71 Yale, L.J. 371, 376–82 (1962) for a discussion of the distinction between the functions of these pre-trial procedures. The author analyzes Fed.R.Civ.P. 36 which contains language identical to our Supreme Court Rule 59.01(b).

2. *See id.* at 376. Professor Finman describes the efficiency aspects of Fed.R.Civ.P. 36: "If a point is conceded, litigants need not expend efforts in investigations concerning it nor incur expense in presenting evidence to prove it. . . . Admissions reduce the time required to try a case. . . . Admissions encourage litigants to evaluate realistically the hazards of trial and thus tend to promote settlements." *See also:* Wright and Miller, Federal Practice and Procedure: Civil § 2252 (1970).

no material issue of fact to be tried and, therefore, supports summary judgment. *Linde,* at 546[4]. In *Moosman v. Joseph P. Blitz, Inc.,* 358 F.2d 686, 688[4] (2d Cir.1966), the court affirmed that the failure to respond to a request for admissions will permit a court "to enter summary judgment if the facts as admitted are dispositive."

■ Depositions, on the other hand, serve as vehicles for discovery. Rule 56.01(a). "The taking of a deposition . . . is only a preparatory step designed to obtain or preserve evidence which may subsequently be used at the trial if a situation arises where such evidence is admissible and either party elects to make use of it." *Woelfle v. Connecticut Mutual Life Insurance Co.,* 234 Mo. App. 135, 112 S.W.2d 865, 873[8] (1938). Unlike an admission, a deponent "is not conclusively bound by his deposition . . . ." *Swinger v. Bell,* 373 S.W.2d 30[5] (Mo.1963).

In a similar discovery context, interrogatories, the court in *Mangan v. Broderick and Bascom Rope Co.,* 351 F.2d 24, 28[1] (7th Cir.1965), *cert. denied,* 383 U.S. 926, 86 S.Ct. 930, 15 L.Ed.2d 846 (1966), *citing Woods v. Robb,* 171 F.2d 539 (5th Cir.1948), held that "unanswered requests are not abandoned by the subsequent filing of interrogatories . . . ." As in the case before us, the interrogatories in *Woods* "intended to establish the same facts as the requested admissions." *Woods,* at 541[3]. *See also Straley v. Idaho Nuclear Corp.,* 94 Idaho 917, 500 P.2d 218, 224[9] (1972), in which the Supreme Court of Idaho refused to permit the trial court to excuse a respondent from answering requests for admissions even though respondent argued that he had provided the same information in answers to interrogatories. The Idaho court noted the difference between the discovery of facts and the proof of facts. *Id.*

■ We conclude that deposition responses cannot serve as substitutes for responses to requests for admissions. N.R.'s first point on appeal is well taken.

■ In response to N.R.'s second point on appeal, we conclude that, in the absence of a motion to withdraw or amend the admis-

sions, R.J.D.'s failure to respond to N.R.'s request conclusively established these matters at trial. Rule 59.01(a) expressly provides that a matter which is the subject of a request for admissions "is admitted unless . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter." Applying this rule, the court, in *Hudson v. General Mutual Insurance Co.,* 430 S.W.2d 755, 756[1] (Mo.App.1968), held that "by defendant's failure to answer the Request [for admissions], the . . . recited statements of fact are deemed admitted under the rule [59.-01]." Similarly, under Fed.R.Civ.P. 36(a), "a party's failure to file a verified response to requests for admissions . . . admits the truth of all matters therein stated." *Mangan,* at 28[1].

In failing to answer a request for admissions, the matters are deemed admitted and, therefore, removed from further dispute at trial. *Linde,* at 546[4]. *See also Hudson,* at 756[1]. Although Missouri appellate courts have not squarely faced the question of whether deposition responses may contradict matters admitted under Rule 59.01(a), removing admitted matters from issues in litigation should preclude contesting these matters at trial. Interpreting the federal rule, the Seventh Circuit held that "where no response is made to requests for admissions, the party making the request is entitled to rely thereupon and no further proof is required to be made of the facts thus admitted." *Mangan,* at 28[3], *citing Water Hammer Arrester Corp. v. Tower,* 171 F.2d 877, 879[1] (7th Cir.1949). *See also Eickman Estate v. Tuel,* 291 N.W.2d 308, 312[6] (Iowa 1980), in which the Supreme Court of Iowa, interpreting language that parallels Rule 59.01(a), held that matters admitted by operation of law could not be contested with portions of depositions which were inconsistent or contrary to the admission.

■ In considering N.R.'s second point on appeal, we see no reason why the matters deemed admitted should not also bind the Administrator. In an analogous context,

our court has held that, as an exception to the hearsay rule, admissions against interest made by the original party, who later died, are admissible against his Administrator. *Dusenbery's Estate v. Stamm,* 255 S.W.2d 57, 61[5] (Mo.App.1953); *Brautigam v. Hoffman,* 444 S.W.2d 528, 532[3] (Mo.App.1969).

Although the operation of Rule 59.01(a) may seem harsh and formalistic, we note that Rule 59.01(b) provides relief from automatic admission upon prevailing in a motion to withdraw the admissions. In the instant case, however, neither R.J.D. nor the Administrator moved to withdraw these admissions. Therefore, we conclude that the trial court's failure to deem these admitted matters conclusively established against the Administrator constitutes error.

■ Considering N.R.'s third point, the trial court did not err in failing to mention in the court order a comparison of the child's appearance with the photograph of R.J.D. The trial court is not required to comment on all the evidence adduced at trial; factual issues, "where no specific findings [are] made ... [are] deemed to have been found in accordance with the result reached." *Flowers v. Bales,* 615 S.W.2d 103, 105[3] (Mo.App.1981), Rule 73.01(a)(2). We find no merit in the third point.

In view of our finding that the trial court order rests on a misapplication of law, we next determine if the trial court erred in holding that R.J.D. was not the father of N.R.J.D.

■ Paternity, unaided by the presumption of legitimacy of marriage, must be established by a preponderance of the evidence. *Stegemann v. Fauk,* 571 S.W.2d 697, 701[5] (Mo.App.1978). In *Kenney v. Henson, et al.,* 107 S.W.2d 947, 952[1] (Mo.App.1937), the court held that:

> The preponderance or greater weight of the evidence does not merely mean the greater number of witnesses, but means that evidence which, when weighed with that opposed to it, has the most convincing force, and from which it results that

the greater probability is in favor of the party presenting it.

■ R.J.D.'s admissions that he and N.R. engaged in sexual relations on January 5 and 10, 1975, and that he stated to N.R. in approximately November, 1975, that he believed he was the father of N.R.J.D., are relevant to the issue of paternity. Sexual relations between putative father and mother during the period of conception constitutes relevant evidence of paternity. *Carolyn v. Stahl,* 601 S.W.2d 636, 637[2] (Mo.App.1980). "Recognition of a child as one's own is a 'supporting fact' and tends to demonstrate actual paternity." *Simpson v. Blackburn,* 414 S.W.2d 795, 805[11] (Mo.App.1967).

Additionally, our court has affirmed the relevance to paternity of a comparison between actual features of a child and her father in *T.A.L.S. v. R.D.B.,* 539 S.W.2d 737, 739[5] (Mo.App.1976), *citing* 55 A.L.R.3d 1096–97.

Because the trial court's order rests on a misapplication of Rule 59.01, and the record before us lacks evidence of the comparison between the features of N.R.J.D. and R.J.D., we remand the issue of paternity to the trial court for a reevaluation of the evidence. We carefully except our ruling from Rule 84.14 which commands us to fully dispose of a case, unless justice otherwise requires. The record before us lacks evidence from which to make a comparison between the physical features of N.R.J.D. and R.J.D. In remanding a court tried case, our court in *In Re Kranitz,* 610 S.W.2d 300, 304[1] (Mo.App.1980), *citing Capoferri v. Day,* 523 S.W.2d 547, 557[2, 3] (Mo.App.1975), explained that the "duty to make final disposition 'presupposes a record and evidence upon which we can perform this function with some degree of confidence in the reasonableness, fairness and accuracy of our conclusion ....'" The omission of the comparison evidence here renders us unable to confidently dispose of the paternity issue.

Also, of great importance, is the delicate nature of the matter before us. Conse-

quently, we reverse and remand to the trial court.

Judgment reversed and remanded.

STEPHAN and KAROHL, JJ., concur.